RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0279p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

VICTORIA A. JACKSON, individually and as surviving wife of Daniel A. Jackson, Deceased,

*Plaintiff-Appellant,*

v.

FORD MOTOR COMPANY,

*Defendant-Appellee.*

No. 16-5488

───────────────

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 1:15-cv-01180—J. Daniel Breen, Chief District Judge.

Decided and Filed: November 29, 2016

Before: MOORE and CLAY, Circuit Judges; HOOD, District Judge.[*]

───────────────

**COUNSEL**

**ON BRIEF:** Joe Bednarz, Jr., BEDNARZ & BEDNARZ, Hendersonville, Tennessee, for Appellant. J. Randolph Bibb, Jr., Ryan N. Clark, LEWIS, THOMASON, KING, KRIEG & WALDROP, P.C., Nashville, Tennessee, Stephanie A. Douglas, Jessica R. Vartanian, BUSH SEYFERTH & PAIGE PLLC, Troy, Michigan, for Appellee.

───────────────

**OPINION**

───────────────

KAREN NELSON MOORE, Circuit Judge. In this diversity case, Daniel A. Jackson ("Mr. Jackson"), the husband of Plaintiff-Appellant Victoria A. Jackson ("Mrs. Jackson" or

───────────

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

"Jackson"), died in a car accident on U.S. Highway 70 after he lost control of his 2012 Ford Focus. Mrs. Jackson, who was a passenger in the car, was seriously injured. She now alleges that Defendant-Appellee Ford Motor Company ("Ford"), the manufacturer of their car, was responsible for the accident because it equipped the car with a defective "Electronic Power Assisted Steering" ("EPAS") system that caused the loss of control. Ford filed a motion to dismiss, arguing, inter alia, that Jackson did not adequately plead proximate cause. The district court granted Ford's motion, and Jackson has appealed. For the reasons stated below, the district court demanded too much of Jackson under the familiar *Iqbal* and *Twombly* pleading requirements. Accordingly, we **REVERSE** the district court's judgment dismissing the complaint and **REMAND** the case for further proceedings.

## I. BACKGROUND

Because "[w]e . . . accept all plausible well-pled factual allegations as true," *see City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 502 (6th Cir. 2010), the following is a background of the case as described in Mrs. Jackson's amended complaint. Mr. Jackson was driving his 2012 Ford Focus on U.S. Highway 70 when "suddenly and without warning, the Ford Focus darted left across the center line into oncoming traffic. It was struck head on by a wrecker." R. 36 (Am. Compl. ¶ 13–14) (Page ID #403). "[A]s a result of the collision, Mr. Jackson received serious injuries and died. Mrs. Jackson received serious, permanent and life threatening injuries and was life flighted to Vanderbilt University Medical Center." *Id.* ¶ 15 (Page ID #403). Mrs. Jackson claims that the EPAS system "was the cause of the Plaintiff[']s vehicle darting left into oncoming traffic." *Id.* ¶ 16 (Page ID #403); *see also id.* ¶¶ 104, 107, 110, 118, 121, 124, 129, 135, 139 (Page ID #427–32, 434–35).

"The EPAS system in the 2012 Ford Focus . . . replaces the traditional hydraulic-assist power steering pump and [consists] of a power steering control motor, electronic control unit, torque sensor and steering wheel position sensor." *Id.* ¶ 17 (Page ID #404). Jackson describes the "systemic defect" in this system as follows: "(1) seepage of conformal coating into the EPAS system's ribbon cable, which leads to the loss of connections within the EPAS system; (2) misalignment of ribbon cable pins utilized in the EPAS system, which leads to the breakage of critical wiring and the loss of connections within the EPAS system; (3) manufacturing defects

in the contact plating used in the EPAS system, which causes corrosion and an interruption in electrical connections within the EPAS system; (4) defects in EPAS system's sensors; and (5) defects in the gear assembly." *Id.* ¶ 17 (Page ID #404); *see also id.* ¶ 47 (Page ID #412–13). Jackson claims that "[t]his defective EPAS system renders the system prone to sudden and premature failure during ordinary and foreseeable driving situations" and that "drivers of the Defective Vehicles experience significantly increased steering effort and an increased risk of losing control of their vehicles when the EPAS system fails." *Id.* ¶¶ 17–18 (Page ID #404). Jackson defined "Defective Vehicles" as vehicles that "contain the same or similar EPAS as the Plaintiff's 2012 Ford Focus," which include various other Ford models. *Id.* ¶ 37 (Page ID #409).

The alleged EPAS defect "can, and has, caused injuries to occupants of the Defective Vehicles." *Id.* ¶ 47 (Page ID #413). Jackson points to three instances where drivers experienced steering failure in their 2012 Ford Focuses, *id.* ¶¶ 87–89 (Page ID #424), and several other instances where other vehicles equipped with the same or similar EPAS system suffered from steering failure, *id.* ¶¶ 69–86, 90–91 (Page ID #419–25). Jackson's amended complaint alleges that Ford is strictly liable for manufacturing and design defects; strictly liable for defective warnings; liable for negligent manufacture, design, and warning; engaged in misrepresentations; and breached implied and express warranties. *See id.* ¶¶ 105–39 (Page ID #428–35).

After Jackson filed her complaint in state court, Ford removed the case to the U.S. District Court for the Western District of Tennessee. R. 1 (Notice of Removal at 10) (Page ID #10). The district court then dismissed Defendants Golden Circle Ford, Lincoln, Mercury, Inc. and Steve Marsh Ford, Inc. under the doctrine of fraudulent joinder. *See Jackson v. Ford Motor Co.*, No. 15-1180, 2016 WL 270485, at *1 (W.D. Tenn. Jan. 21, 2016). Ford filed a motion to dismiss or, in the alternative, for a more definite statement pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e), arguing that Mrs. Jackson "has not pled facts suggesting that a defect in the 2012 Ford Focus Mr. Jackson was driving at the time of his crash caused or contributed to the crash." R. 15-1 (Def.'s Mem. in Support of Its Mot. Dismiss at 1) (Page ID #280). Following an amended complaint filed by Mrs. Jackson, R. 36 (Am. Compl.) (Page ID #401), and a supplemental motion to dismiss filed by Ford, R. 35 (Def.'s Supp. Mem. in Support

of Mot. Dismiss) (Page ID #396),[1] the district court granted Ford's motion to dismiss. *See Jackson v. Ford Motor Co.*, No. 15-1180, 2016 WL 324383 (W.D. Tenn. Jan. 26, 2016). Jackson then filed a motion to alter or amend the judgment, which the district court denied. *See Jackson v. Ford Motor Co.*, No. 15-1180, 2016 WL 4533028 (W.D. Tenn. Mar. 21, 2016). Jackson has appealed the orders on the motion to dismiss and motion to alter or amend the judgment. *See* R. 59 (Notice of Appeal at 1) (Page ID #526). The district court had jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Standard of Review

"We review de novo a district court's decision to grant a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 926 (6th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

Jackson argues that "complex product liability cases are unique and do not lend themselves to rigid rules of pleading." Appellant's Br. at 24. However, Jackson did not raise this argument in the district court, R. 27 (Opp'n to Mot. to Dismiss) (Page ID #361–66), so she has forfeited the right to have it addressed on appeal, *see Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006). Nevertheless, we note that we have followed the standard set forth in *Iqbal* and *Twombly* in other products liability cases. *See, e.g., In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d at 926.

### B. Applicable Law

"Because this suit is before us pursuant to our diversity jurisdiction, we apply the substantive law of [Tennessee] and federal procedural law. When applying the substantive law

---

[1]Although Ford filed its supplemental motion to dismiss one day before Jackson's amended complaint, it addresses the changes that Jackson made in her amended complaint.

of [Tennessee], we must follow the decisions of the state's highest court when that court has addressed the relevant issue. If the issue has not been directly addressed, we must anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *City of Cleveland*, 615 F.3d at 502 (internal quotation marks omitted).

## C. Ford's Motion to Dismiss

On appeal, Jackson argues that the district court improperly dismissed her amended complaint on the ground that she did not sufficiently plead causation. *See* Appellant's Br. at 8. The district court held that Jackson's amended complaint consisted of "conclusory statements regarding proximate cause." *Jackson*, 2016 WL 324383, at *2. Specifically, it held, "Although Jackson discussed at length the EPAS system in the Ford Focus and many other vehicles produced by Ford, she failed to explain how any of the alleged defects in the system caused Daniel Jackson's car to suddenly veer into another lane of oncoming traffic. Indeed, while Plaintiff insisted that numerous deficiencies exist with the Ford Focus in general, nowhere in her complaint or amended complaint does she specify what specific flaw caused the accident in question." *Id.* (internal citation omitted). In addition, it held that Mrs. Jackson's claim of breach of implied warranty of merchantability and fitness failed because Mrs. Jackson "failed to demonstrate that the alleged defect in the vehicle was the proximate cause of the accident and her husband's death." *Id.* at *3.

As we explain below, we hold that Jackson has stated a plausible claim to relief. Therefore, we reverse and remand.

Under the Tennessee Products Liability Act of 1978 ("TPLA"), "[a] manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code Ann. § 29-28-105(a) (West 2002). A "'[p]roduct liability action' includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any

other substantive legal theory in tort or contract whatsoever." *Id.* § 29-28-102(6). "The plaintiff also must trace his or her injury to the defect." *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 282 (Tenn. 2005) (citing *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000)). "[U]nless there is a showing that the particular defect or dangerous condition proximately caused the plaintiff's injury, the manufacturer is not liable." *King*, 37 S.W.3d at 435, *cited in Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).[2]

Because "Ford does not dispute that Plaintiff's Amended Complaint plausibly pleads a defect in the EPAS system," Appellee's Br. at 12, Jackson must plausibly plead the remaining element of a products liability action in Tennessee: causation. Indeed, she has. Under Tennessee law, "a three-pronged test for proximate cause is applied: (1) the tortfeasor's conduct must have been a 'substantial factor' in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence." *Haynes v. Hamilton Cty.*, 883 S.W.2d 606, 611–12 (Tenn. 1994) (internal quotation marks omitted). Referencing the proximate cause standard set forth by the United States Supreme Court, which bears strong resemblance to the Tennessee Supreme Court's standard,[3] we have held that "causal weaknesses will more often be fodder for a summary-

---

[2]Jackson argues that *King* "applied a much different standard than should be applied to the current motion to dismiss" because it addressed a motion for summary judgment. Appellant's Br. at 24. However, causation is an element of a products-liability action under Tennessee law. *See Brown*, 181 S.W.3d at 282. At the pleading stage, Jackson need only allege causation. *See Iqbal*, 556 U.S. at 678. At the summary judgment stage, she must show that there is a genuine material dispute regarding causation. *See* Fed. R. Civ. P. 56(a). Just as the Supreme Court began *Iqbal* "by taking note of the elements a plaintiff must plead to state a claim of unconstitutional discrimination against officials entitled to assert the defense of qualified immunity," 556 U.S. at 675, so too do we begin by taking note of the elements a plaintiff must plead to state a products-liability claim under Tennessee law.

[3]Similarly to the Tennessee Supreme Court standard described above, the United States Supreme Court has held that proximate cause is established when there is "some direct relation between the injury asserted and the injurious conduct alleged. Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268–69 (1992). The United States and Tennessee Supreme Courts have also made similar observations about the legal foundation for proximate cause. *Compare id.* at 268 ("At bottom, the notion of proximate cause reflects ideas of what justice demands, or of what is administratively possible and convenient." (internal quotation marks omitted)), *with Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 n.6 (Tenn. 1992) ("Proximate or legal cause is a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, precedent and our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and

judgment motion under Rule 56 than a motion to dismiss under Rule 12(b)(6)." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004); *see also Haynes*, 883 S.W.2d at 612 ("Proximate cause . . . [is] ordinarily [a] jury question[], unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome.").

Applying the first prong in *Haynes*, we conclude that Jackson has plausibly alleged that a defect in the 2012 Ford Focus's EPAS system was a substantial factor in bringing about the accident. This is apparent from the litany of other accidents identified by Jackson where the EPAS system allegedly failed, causing the driver to lose control of the vehicle.[4] *See id.* ¶¶ 69–86, 90–91 (Page ID #419–25). In addition, the loss of control caused by a defective EPAS system is plainly consistent with "the Ford Focus dart[ing] left across the center line into oncoming traffic." *Id.* ¶ 14 (Page ID #403). Applying the second prong, we conclude that the TPLA creates a cause of action for the strict liability, negligence, breach of warranty, and misrepresentation claims raised in Jackson's amended complaint, *see* Tenn. Code Ann. § 29-28-102(6); there is no rule or policy that should relieve Ford of liability if indeed it equipped Jackson's Focus with a defective EPAS system. Finally, that this accident could have reasonably been foreseen by a person of ordinary intelligence and prudence is apparent from the defect in the EPAS system. In her amended complaint, Jackson alleged that "[t]he 'EPAS' was the cause of the Plaintiff[']s vehicle darting left into oncoming traffic." R. 36 (Am. Compl. ¶ 16) (Page ID #403). She explained how "seepage of conformal coating into the EPAS system's ribbon cable," "misalignment of ribbon cable pins," "manufacturing defects in the contact plating," "defects in [the] EPAS system's sensors," and "defects in the gear assembly" all result in a system that is

---

convenient." (internal quotation marks omitted)). Finally, Tennessee courts have referenced the federal proximate-cause standard in their analysis of proximate cause. *See, e.g., Steamfitters Local Union No. 614 v. Philip Morris, Inc.*, No. W1999-01061-COA-R9-CV, 2000 WL 1390171, at *4, 6–7 (Tenn. Ct. App. Sept. 26, 2000) (citing and applying *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999), which cited the statement in *Holmes* that there must be "some direct relation between the injury asserted and the injurious conduct alleged").

[4]Ford argues that the EPAS system failures in other vehicles "are not 'substantially similar' to the incident alleged in Plaintiff's Amended Complaint." Appellee's Br. at 14. However, *Croskey v. BMW of North America, Inc.*, the case that Ford cites for the proposition that "[t]he plaintiff has the burden of showing the substantial similarity between prior accidents and his own," addressed the plaintiff's burden for the admitting evidence at trial. 532 F.3d 511, 518 (6th Cir. 2008). At this stage, Jackson's description of other vehicles with the same EPAS system losing control, along with her other allegations, is sufficient to plead causation.

"prone to sudden and premature failure during ordinary and foreseeable driving situations." *Id.* ¶ 17 (Page ID #404). This failure, Jackson alleges, causes "drivers of the Defective Vehicles [to] experience significantly increased steering effort and an increased risk of losing control of their vehicles," *id.* ¶ 18 (Page ID #404), precisely what happened in Jackson's case.

Ford's hypertechnical arguments regarding the allegations in Jackson's amended complaint rest on an inaccurate understanding of notice pleading. We accept the truth of Jackson's well-pleaded facts and apply our "judicial experience and common sense." *See Iqbal*, 556 U.S. at 678–79. However, Ford makes its own factual allegations that are not in Jackson's amended complaint. For instance, nowhere does Mrs. Jackson allege that Mr. Jackson "was driving straight down the highway," Appellee's Br. at 14; she alleges that Mr. Jackson was driving "westbound on US HWY 70 in Benton County, Tennessee," R. 36 (Am. Compl. ¶ 13) (Page ID #403).

Ford's plausibility arguments are likewise without merit. Even if Mr. Jackson were driving in a straight direction, it is plausible that he could lose control, cross the center line, and hit a wrecker. *See id.* ¶ 104. For instance, if Mr. Jackson lost his ability to steer while driving around a bend, he could have crossed the center line without ever steering in a particular direction. Similarly, difficulty steering while driving around a bend could cause "*sudden steering or darting*," *see* Appellee's Br. at 14, depending on how sharp the bend is. Alternatively, difficulty steering while driving straight could have caused Mr. Jackson to overcompensate, which in turn could cause sudden steering or darting. In sum, these competing inferences may be proven or disproven in discovery or at trial. But for the time being, and in light of our admonition that "causal weaknesses will more often be fodder for a summary-judgment motion under Rule 56 than a motion to dismiss under Rule 12(b)(6)," *Trollinger*, 370 F.3d at 615, Jackson has made sufficient allegations to "nudge[] [her] claim[] across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment dismissing the complaint and **REMAND** the case for further proceedings.