**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0425n.06

Case No. 17-5121

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| GRIDSMART TECHNOLOGIES, INC., | ) | **FILED** |
| | ) | Jul 20, 2017 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| MARLIN CONTROLS, INC., | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE: GIBBONS, KETHLEDGE, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** This matter arises from an arbitration award that was entered as a result of an alleged distribution agreement breach. Although the distribution agreement contained a mandatory arbitration clause, the district court found that the arbitration provision was terminated when the distribution agreement was terminated. Therefore, the district court submitted a final order and judgment vacating the arbitration award. The issue before this Court is whether the arbitration clause in the distribution agreement survived termination of the agreement. Because we find that the arbitration clause did not survive termination of the distribution agreement and that the district court did not err when it vacated the arbitration award, we **AFFIRM** the district court's order and judgment.

I.

The facts that follow are largely derived from the district court orders.  Marlin Controls, Inc. ("Marlin") is in the construction industry and provides traffic-signal equipment to construction projects.  **R. 22, Page ID #304.**  Gridsmart Technologies, Inc. ("Gridsmart") manufactures and sells a camera system to collect data at intersections and on highways.  *Id***.** Under a 2014 distribution agreement (the "Distribution Agreement"), Marlin had the exclusive right to distribute the Gridsmart products within a defined region in the United States.  *Id***.**

On June 30, 2015, Gridsmart exercised its right to terminate the Distribution Agreement effective July 31, 2015.  *Id***., at Page ID #305.**  The parties then tried to reconcile how Marlin's outstanding orders, that were delivered to Marlin on September 30, 2015, would be handled. What followed is disputed.  According to Marlin, its construction contracts did not pan out, so it sent the equipment for those projects back to Gridsmart.  Gridsmart then demanded full payment for the returned equipment.  Gridsmart argued that the returned equipment had been specially made for Marlin and was obsolete by the time Marlin returned it.  Thus, rather than double-dipping, Gridsmart argued that it was trying to recoup the value of the now-worthless equipment.

In January 2016, Gridsmart filed a claim with the American Arbitration Association. Marlin refused to participate.  *Id***.**  On March 21, 2016, Gridsmart asked the arbitrator to grant it summary judgment.  *Id***.**  The hearing was set for March 25, 2016.  *Id***.**  Marlin did not appear at the hearing but filed a responsive letter a week later.  *Id***.**  On April 8, 2016, the arbitrator granted Gridsmart's motion for summary judgment and refused to consider Marlin's responsive letter. *Id***.**

Thereafter, Gridsmart sought to enforce the award by petitioning the Knox County Chancery Court.  Marlin timely removed the case to the United States District Court for the

Eastern District of Tennessee (the "District Court"). ***Id.*** On June 23, 2016, Marlin moved in the district court to vacate the arbitration award. ***Id.*** On January 10, 2017, the district court entered a judgment and order granting Marlin's motion to vacate and denying Gridsmart's petition to enforce the arbitration award and for associated attorney's fees. ***Id.*** This timely appeal follows.

II.

After Gridsmart filed this action in Tennessee state court, Marlin timely removed the case to the United States District Court for the Eastern District of Tennessee pursuant to 28 U.S.C. § 1441(b) and § 1446. The District Court rightly exercised jurisdiction under 28 U.S.C. § 1332 since the parties are citizens of different states and since the amount in controversy exceeded the jurisdictional threshold amount of $75,000. The appeal arises from the District Court's final order and judgment entered on January 10, 2017. Gridsmart timely filed its Notice of Appeal on January 31, 2017. This Court has jurisdiction over the appeal of that final judgment pursuant to 28 U.S.C. § 1291.

III.

A district court's decision whether to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, is reviewed *de novo. Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Similarly, a district court's decision regarding the arbitrability of a particular dispute is reviewed *de novo. McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004).

"A longstanding principle of this Circuit is that no matter how strong[ly] the federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'" *Simon v. Pfizer, Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (citing *United Steelworkers, Local No.*

*1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972)); *see also AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Bratt Enters., Inc., v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003); *Roney & Co. v. Kassab*, 981 F.2d 894, 897 (6th Cir. 1992).

Therefore, the first place to turn is the language of the contract, in this case the language of the Distribution Agreement. "Because arbitration agreements are fundamentally contracts, [this Court] review[s] the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). The Distribution Agreement is government by Tennessee state law. **RE-1, Page ID #17, § 9.1.** The Tennessee Uniform Commercial Code ("Tennessee UCC") applies because the Distribution Agreement is a contract for the sale of goods. Tenn. Code Ann. § 47-2-102.

Both the plain language of the Distribution Agreement and the Tennessee UCC instruct that no enforceable contract existed between the parties regarding the orders at issue. Section 6.2 of the Distribution Agreement, which describes Marlin as the "Distributor" and Gridsmart as the "Company," provides:

> 6.2     Effect of Termination on Unfulfilled Orders. If at the time this Agreement is terminated for any reason by either Party, *all orders for Products made by Distributor or the Company, that have not been fulfilled and/or shipped (whether partial or full) by the company to Distributor shall be fulfilled by mutual agreement between the Parties*; provided, however, should Distributor terminate this Agreement for any reason within sixty (60) days of placing an order for Products, Distributor shall remain liable for payment of such order to the extent fulfilled by the Company unless the Company provides written notice that the order is deemed canceled.

**RE 1-1, Page ID #15, § 6.2 (emphasis added).** Since the orders at issue were pending at the time the Distribution Agreement was terminated, those orders were subject to a different mutual agreement than the Distribution Agreement. Under the plain language of the contract,

absent a second contract or new mutual agreement, the parties ceased to have any rights or obligations concerning the orders at issue.

The Tennessee UCC further demands this conclusion. Under the Tennessee UCC, when a party terminates a contract, "all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives." Tenn. Code Ann. § 47-2-106(3). In other words, once a party terminates a contract, all obligations concerning pending orders are discharged on the date of termination.

The question is whether the parties ceased to have any agreement as to orders that were outstanding on July 31, 2015 (the effective date of termination). The Tennessee UCC instructs that once the Distribution Agreement was terminated, the parties' rights and obligations, including the obligation to arbitrate disputes, as to those orders were also terminated. According to Section 6.2 of the Distribution Agreement, those outstanding orders required a new contract. The parties never entered into a new contract or written arbitration agreement concerning the outstanding orders at issue.

Gridsmart, however, argues that there is a suggested presumption of arbitrability. Section 8 of the Distribution Agreement requires the parties to submit all disputes arising under the Distribution Agreement to the American Arbitration Association. **RE 1-1, Page ID #16-17, § 8.** Therefore, Gridsmart argues, so long as the parties' dispute arises out of or relates to a contract containing the arbitration clause, the dispute is presumptively arbitrable and must be arbitrated unless the agreement "negate[s] expressly" or "by clear implication" that presumption. *Litton Fin. Printing Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 204 (1991).

As a preliminary matter, Gridsmart did not raise this argument in the district court. Therefore, Gridsmart has waived all such arguments on appeal. *Jackson v. Ford Motor Co.*,

842 F.3d 902, 906 (6th Cir. 2016) ("[Appellant] did not raise this argument in the district court so she has forfeited the right to have it addressed on appeal."); *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 799 (6th Cir. 2012) ("If a party fails to raise an issue to the district court, then that party 'forfeits the right to have the argument addressed on appeal.'") (quoting *Armstrong v. City of Melvindale*, 432 F.3d 695, 699-700 (6th Cir. 2006)); *Grider Drugs, LLC v. Express Scripts, Inc.*, 500 F. App'x 402, 405 (6th Cir. 2012) ("[A]n argument not raised before the district court is waived on appeal to this Court.") (quoting *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008)). However, even if Gridsmart had not waived this argument, the suggested presumption does not apply because: (1) no enforceable contract exists between the parties regarding the orders at issue; and (2) the Distribution Agreement had a clear implication that the arbitration clause would not survive its termination.

First, as discussed above, once Gridsmart terminated the Distribution Agreement, the parties ceased to have any rights or obligations concerning the orders at issue absent a new agreement governing those orders. As this Circuit has made clear, no matter how strongly federal policy favors arbitration, arbitration is a matter of contract between the parties. *Simon*, 398 F.3d at 775. The Distribution Agreement's plain language terminated any such arbitration obligation.

Second, even if the plain language did not clearly indicate whether the arbitration obligation survived the termination of the contract, this Court can look to the contract as a whole and come to the same conclusion. There is a clear implication in the Distribution Agreement that the arbitration clause would not survive its termination because the Agreement contained express language for clauses that would survive termination. Specifically, Section 9.2 of the Distribution Agreement governing the confidentiality clause states, "the terms and conditions of this

Confidentiality Section *shall survive any termination* or expiration of this Agreement for a period of two (2) years." **RE 1-1 Page ID #17, § 9.2 (emphasis added).** If the parties intended the Section 8 arbitration clause to likewise survive the Distribution Agreement's termination, the parties could have put that in the contract. The arbitration clause contains no such survival language. **RE 1-1 Page ID #16-17, § 8.** Therefore, the plain language of the Distribution Agreement indicates that upon termination, the entire Distribution Agreement is terminated except the confidentiality clauses. There remains no right to compel arbitration. Therefore, the district court properly vacated the arbitration award.

Because we affirm the district court's decision to vacate the arbitration award, it is not necessary for us to reach the issues of the arbitrator's refusal to hear Marlin's letter and the district court's denial of Gridsmart's request for attorney's fees.

IV.

For the foregoing reasons, we **AFFIRM** the judgment and order of the district court vacating the arbitration award.