NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0296n.06
No. 18-5715

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| L.G., a minor, by and through his next friends, his parents, G.G. and L.G., | ) ) ) | **FILED**<br>Jun 10, 2019<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| BOARD OF EDUCATION OF FAYETTE COUNTY, KENTUCKY, | ) ) | EASTERN DISTRICT OF KENTUCKY |
| Defendant-Appellee. | ) ) | |

**BEFORE:** NORRIS, DAUGHTREY, and LARSEN, Circuit Judges.

**MARTHA CRAIG DAUGHTREY, Circuit Judge.** L.G., a minor, brought suit against the Board of Education of Fayette County, Kentucky, alleging that he was denied equal access to an education in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794. L.G. further alleges that, in violation of Kentucky Revised Statute § 344.280 and § 504 of the Rehabilitation Act, the Board retaliated against him and his parents in response to his parents' advocacy on his behalf. The district court dismissed L.G.'s denial-of-access-to-an-education claim pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and dismissed his retaliation claim pursuant to Rule 12(b)(6) for failure to state a claim. L.G. appeals. Because L.G. seeks relief based on the denial of a free appropriate education but failed to exhaust his administrative remedies as required by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(l), and

because he has not stated a facially plausible retaliation claim, we **AFFIRM** the district court's ruling.

## FACTUAL AND PROCEDURAL BACKGROUND

In September of 2016, L.G. was diagnosed with an e-coli infection and advised by his physician that he should not attend school. L.G.'s parents alerted the administration at Morton Middle School about L.G.'s condition and his need for an extended absence. At some point between the time following this notification but before late November of 2016, L.G.'s mother learned that L.G.'s notice regarding his condition and inability to return to school was "not accepted" by the Morton Middle School administration and that L.G. was receiving failing grades due to his non-attendance. On October 5, 2016, a staff member at Morton Middle School reached out to L.G.'s mother offering that she could pick up L.G.'s school work and that some assignments were available online. It is unclear from L.G.'s complaint and briefing whether this contact came before or after L.G.'s parents learned of his failing grades, but L.G. claims that in the months following his diagnosis his parents were in "regular contact" with the Morton Middle School staff.

On November 20, 2016, a social worker from the Cabinet for Health and Family Services contacted L.G. and his family in response to a complaint filed that asserted that L.G. was "dependent, neglected, or abused[.]" Around the same time, L.G. and his parents also became aware that someone filed a truancy petition against L.G.'s parents in light of his absences. L.G. does not make specific allegations about who filed either the Health and Family Services complaint or the truancy petition. As a result of the complaint and truancy petition, L.G.'s parents were required to meet with a court-designated worker to discuss L.G.'s situation and absence from school. The Board eventually withdrew the truancy charges. L.G.'s First Amended Complaint

alleges that the withdrawal of charges occurred on January 18, 2017, but his briefing on appeal is less specific.

In January 2017, L.G. was approved for homebound services[1] and, on the 25th of that month, the Board contacted L.G.'s parents about setting up a § 504 educational plan. However, L.G.'s parents removed L.G. from Fayette County Public Schools because of "the ill-founded truancy charges and the lack of attention to the child's right to an appropriate education." Again, here, the timeline is muddled. L.G.'s First Amended Complaint states that L.G.'s parents withdrew him in March of 2017 while his appellate brief dates his withdrawal as occurring on January 18, 2017. Regardless, the specific date makes no difference to L.G.'s case.

L.G. filed this lawsuit in state court against the Board alleging discrimination on the basis of L.G.'s disability.[2] The Board removed the case to federal court, and moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Board argued that the district court lacked jurisdiction over L.G.'s Rehabilitation Act claim because L.G. failed to exhaust his administrative remedies and because both claims failed to state a claim upon which relief could be granted. The district court granted the Board's motion to dismiss, and L.G. timely appealed.

---

[1] "Homebound instruction" apparently refers to an option that allows students to receive instruction in their own homes, from public school teachers. This situation differs from "homeschooling," in which students receive instruction at home from their parents. *See, e.g.*, Ky. Rev. Stat. § 157.270.

[2] L.G.'s initial complaint included three individual staff members of Morton Middle School, but he voluntarily dismissed the claims against the individuals. Following that dismissal, L.G. filed his First Amended Complaint.

## DISCUSSION

### Standard of Review

We review *de novo* motions to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6). *Boler v. Earley*, 865 F.3d 391, 400 (6th Cir. 2017) (quoting *Dealer Comp. Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 560 (6th Cir. 2008)); *Jackson v. Ford Motor Co.*, 842 F.3d 902, 906 (6th Cir. 2016). In a Rule 12(b)(1) facial challenge like that lodged by the Board, we review "merely the sufficiency of the pleading" and take as true the allegations a plaintiff presents in his complaint. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816-17 (6th Cir. 2017) (internal quotations and citations omitted). The plaintiff bears the burden of establishing jurisdiction in order to survive the motion against him. *Id.* Likewise, in reviewing a 12(b)(6) motion to dismiss, we accept all factual matter in the complaint as true and consider whether the complaint contains sufficient information to "state a claim to relief that is plausible on its face." *Jackson*, 842 F.3d at 906 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To overcome a 12(b)(6) motion, the plaintiff must present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although a plaintiff need only provide a "short and plain statement" of his claim, "a formulaic recitation of the elements of a cause of action" does not suffice. *Id.* at 677-78.

### Rehabilitation Act § 504 Discrimination Claim

"[T]he Rehabilitation Act prohibits discrimination against the disabled by recipients of federal funding and requires reasonable accommodations to permit access to such recipient facilities and programs by disabled persons." *Fry v. Napoleon Cmty. Schs.*, 788 F.3d 622, 633 (6th

Cir. 2015) (Daughtrey, J., dissenting); 29 U.S.C. § 794(a); 28 C.F.R. § 41.53. The IDEA offers protections to individuals with disabilities from discriminatory treatment and practices, but unlike the Rehabilitation Act, its protections apply only to school-aged children and are focused solely on an educational setting. *Id.* In many ways, these protections overlap and complement one another, and it is therefore common for individuals who have suffered discrimination in a public-school setting to raise claims alleging violations of both laws. *Id.* But the IDEA and § 504 are not entirely co-extensive, and in some instances, plaintiffs may deem it more appropriate to pursue relief under only one law or the other. *Id.*; *see also Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 753-54 (2017). However, in the interest of judicial economy and to take advantage of agency expertise, the IDEA "requires that a plaintiff exhaust the IDEA's [administrative] procedures before filing an action under the [Americans with Disabilities Act], the Rehabilitation Act, or similar laws when (but only when) [his] suit seeks relief that is also available under the IDEA." *Fry*, 137 S. Ct. at 752 (2017) (internal quotations omitted). As the Supreme Court further explained, the only relief available under the IDEA is for the denial of a "free appropriate public education" (FAPE), which includes "instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction." *Id.* at 748-49 (internal quotations omitted); 20 U.S.C. §§ 1412(a)(1)(A), 1401(9), (26), (29). Thus, if a plaintiff raises only a § 504 claim but the discrimination alleged results in a denial of specifically-tailored instruction, or the services necessary to render that instruction meaningful, the plaintiff essentially seeks a FAPE and must exhaust his administrative remedies under the IDEA. If, however, "the

gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee [a FAPE]," the plaintiff may proceed directly into federal court. *Fry*, 137 S. Ct. at 748.

L.G. has not raised a claim under the IDEA and did not pursue administrative relief prior to filing this lawsuit. The Board contends, however, that L.G. was required to exhaust the IDEA's administrative procedures. L.G. asserts that his complaint seeks relief for the discriminatory denial of *access* to an education, that this discrimination is distinct from the denial of a FAPE, and that, accordingly, the Supreme Court's decision in *Fry* relieves him of the IDEA's exhaustion requirement.

In *Fry*, the plaintiff sought relief for her school's refusal to permit her the use of a service dog when the school otherwise permitted aid from guide dogs. 137 S. Ct. at 751. She required the aid of her service dog for her balance and mobility and so that she could handle tasks independently, such as taking off her coat and opening doors. *Id.* The dog was not absolutely necessary to ensuring the plaintiff's academic growth or the development of her learning abilities, but he was essential to her sense of confidence and independence. *Id.* at 752. Drawing a distinction between "equality of access to public facilities," which is more properly characterized as a discrimination claim, and the denial of a FAPE, which concerns the "adequacy of special education," the Court determined that the plaintiffs' complaint on its face sought relief for "disability-based discrimination" and not for the denial of a FAPE. *Id.* at 758.

Despite his emphasis on the word "access," L.G. has not shown that the discrimination he alleges relates to a denial of "equal access to public facilities" or was otherwise what the Supreme Court referred to as "simple discrimination." *Id.* at 756, 758. L.G. does not contend that the school barred his attendance or refused him an aid or amenity—such as a service dog or access ramp or appropriate seating—that would have rendered the facility more available to him. Nor does he

contend that these services were available to some students, but not to him *because* of his specific disability. *Cf. Fry*, 788 F.3d at 631-32 (Daughtrey, J., dissenting) ("[E]ven if the accommodation sought could be considered 'educational,' the fact that school policy would permit a 'guide dog' on campus, but not a certified 'service dog' suggests why an attempt at exhaustion of administrative remedies would be futile."). L.G. does not claim that he was denied support that would be reasonably available to people with disabilities in non-academic settings, or to adults visiting a middle school. *See Fry*, 137 S. Ct. at 756. Instead, he alleges that the Board "fail[ed] to assist . . . with his academic needs"; that it did not "locate and provide educational services" for him; and that it "ignored [his] right under state and federal law to access to an education."

*Fry* commands that we avoid a "magic words approach" and consider the "substance, not [the] surface" of a plaintiff's claim. *Fry*, 137 S. Ct. at 755. L.G. has not used the words "individualized education program" and insists that he is not complaining about the lack of a "free and appropriate public education." But neither his omission of these phrases nor his use of the word "access" changes the fact that L.G. "is in essence contesting the adequacy of a special education program." *Id*. L.G.'s invocation of his failing grades as evidence of the Board's dereliction of duty is further revealing. Grades are, after all, academic markers used to signify a student's intellectual progress along an education plan. At the heart of L.G.'s claim is an allegation that the Board of Education did not provide him with the individually-tailored educational support he needed in order to continue his academic studies. *Cf. Fry*, 137 S. Ct. at 758 (plaintiff alleged no deficiency in her individualized educational plan and did not accuse the "school even in general terms of refusing to provide the educational instruction and services [she] need[ed]").

L.G.'s § 504 claim, in its essence, seeks redress for the denial of what is essentially equivalent to a FAPE. Thus, pursuant to the mandates of the IDEA, he was required to exhaust his administrative remedies before bringing this claim to the district court.[3]

**Retaliation Claim**

L.G. next claims that the Board retaliated against him and his parents in violation of the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. Ch. 344, and 29 C.F.R. § 33.13, which implements § 504 of the Rehabilitation Act.[4] Retaliation claims under both K.R.S. § 344.280 and § 504 of the Rehabilitation Act that are premised on indirect evidence, as here, are reviewed under the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 134 (Ky. 2003); *A.C. ex rel. J.C. v. Shelby Cty*. Bd. of Educ., 711 F.3d 687, 697 (6th Cir. 2013).[5] To state a retaliation claim successfully under either statute, a plaintiff's pleading must establish a *prima facie* case of

---

[3] This circuit has not determined whether exhaustion under the IDEA is a jurisdictional requirement. *See Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423, 430–31 (6th Cir. 1999). We note, however, that the Supreme Court has recently held that Title VII's administrative-exhaustion requirement is not jurisdictional but is, instead, a mandatory claims-processing rule. *Fort Bend County v. Davis*, 18-525, 2019 WL 2331306 (S. Ct. June 3, 2019). Here, it makes no difference. The Board timely raised the parents' failure to exhaust and argued that the district court should dismiss this claim under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The district court analyzed the failure-to-exhaust argument solely as a jurisdictional claim and dismissed it on that basis. But even if failure to exhaust is not jurisdictional—and we will not consider this unbriefed issue here—the parent's failure to exhaust is still fatal to their claim. Moreover, we may affirm the district court's grant of a 12(b)(1) or 12(b)(6) motion for any reason in the record. *United States ex rel. Harper v. Muskingum Watershed Conservancy District*, 842 F.3d 430, 435 (6th Cir. 2016).

[4] The Board contends that it is not subject to the KCRA and that, even if it were, L.G. does not qualify as disabled under the relevant statute. But we need not analyze those issues because, even if they were resolved in L.G.'s favor, L.G. has not stated a plausible retaliation claim for the reasons discussed below.

[5] In contrast to indirect, circumstantial evidence, "[d]irect evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the [defendant's] actions." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 725 (6th Cir. 2016) (internal quotations and citations omitted). "[D]irect evidence must prove not only discriminatory animus, but also that the employer actually acted on that animus." *Id.* (quoting *Johnson v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 502 Fed. Appx. 523, 534 (6th Cir. 2012)). L.G. has not presented any direct evidence and does not contend that he has. He urges this court to examine his claim under the *McDonnell Douglas* approach.

retaliation, which requires showing that: (1) the plaintiff engaged in protected activity; (2) the defendant knew about the protected activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. *Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004); *A.C. ex rel. J.C.*, 711 F.3d at 697. The Board attacks all four elements of L.G.'s case as lacking sufficient factual support to establish a *prima facie* case.

With regard to the first element, the Board argues that L.G. has not pleaded that he engaged in any protected activity. L.G. contends, however, that his mother "constantly contacted the school administrators in an attempt to force the issue of her son's education[.]" L.G. did not make this precise pleading in his First Amended Complaint, but he did include a factual allegation that his mother "kept in regular contact with the staff at Morton Middle School[.]" We must accept all facts in the light most favorable to the plaintiff, *see Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015), and so should construe the original pleading as tantamount to the argument made in L.G.'s appellate briefing. Nevertheless, this does not adequately establish that L.G. or his parents engaged in a protected activity. The Rehabilitation Act protects "good-faith request[s] for reasonable accommodations[.]" *A.C. ex rel. J.C.*, 711 F.3d at 698. However, L.G. does not say that his parents made any such requests, and a general reference to "advocat[ing] for their child's education" does not plead sufficient facts to establish a claim. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions. . . will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.").

Moreover, even if L.G.'s ambiguous and conclusory pleadings could establish that he and his parents engaged in a protected activity, he falls short of establishing the other elements of his retaliation claim. Most notably, L.G. cannot demonstrate a causal connection between his parents'

advocacy on his behalf and the truancy charge and Health and Family Services complaint filed against him. L.G. asks that we infer a causal connection based solely on the temporal proximity of these adverse actions to his parents' communications with Morton Middle School. In some circumstances, temporal proximity can establish a causal connection between protected activity and an adverse action. *See, e.g., Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525-26 (6th Cir. 2008) (inferring causation from temporal proximity where employer retaliated the same day he learned of protected activity); *Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006) (two months between employer learning of employee's pregnancy and employer firing employee sufficed to establish nexus of causation). However, L.G.'s vague, confused chronology does not provide sufficient details to suggest a clear nexus based on temporality alone, and he has not provided any additional evidence to corroborate his retaliation theory. *Cf. A.C. ex rel. J.C.*, 711 F.3d at 699-700 (relying on temporal proximity along with additional evidence of falsified reports to infer causation).

L.G.'s unspecific pleading has not "nudged [his] claim[] across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Hence, L.G. has not pleaded a *prima facie* case of retaliation and therefore cannot overcome the defendant's Rule 12(b)(6) motion to dismiss.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.