NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0386n.06

Case No. 25-5044

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Aug 04, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| CYNDI BUCHANAN; DANIEL BUCHANAN, | ) ) ) | |
|     Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| JOHNSON & JOHNSON CONSUMER, INC., | ) ) ) | |
|     Defendant-Appellee. | ) ) | OPINION |

Before: THAPAR, NALBANDIAN, and READLER, Circuit Judges.

THAPAR, Circuit Judge. Cyndi Buchanan lost all her hair and alleged that an ingredient in Johnson & Johnson's shampoo and conditioner was to blame. But Buchanan's expert only testified that the shampoo and conditioner couldn't be "ruled out as a cause" of her hair loss; he didn't conclude that the hair products caused her loss. And her other evidence also doesn't show causation. We thus affirm the district court's grant of summary judgment to Johnson & Johnson.

I.

Cyndi Buchanan struggled with hair loss years before she started using the products that she challenges in this lawsuit. In 2000, she lost a small patch of hair, which she attributes to stress. Twenty years later, a quarter-sized bald patch appeared on the back of her head. This time, Buchanan sought medical treatment and received a diagnosis of "alopecia areata." Alopecia areata is an autoimmune disease in which a person's immune system attacks the hair follicles and causes

localized hair loss. Buchanan was prescribed supplements to help with her alopecia. She also tried a new shampoo and conditioner to shore up her thinning hair—Johnson & Johnson's "OGX Biotin & Collagen." After all, Johnson & Johnson marketed the OGX products as "creat[ing] the appearance of thicker, fuller, healthier looking hair." R. 80-2, Pg. ID 1843.

But Buchanan's hair loss continued unabated. In fact, it got worse. Two weeks after she started using the OGX products, her hair started coming out in clumps. After several months of using the OGX products, Buchanan stopped; she suspected that the OGX shampoo and conditioner had made matters worse. She took a picture of the front of the shampoo bottle and threw both bottles away.

Months later, Buchanan had no hair left anywhere on her body. Her autoimmune disease had progressed to "alopecia universalis," an extreme form of alopecia areata.

Buchanan sued Johnson & Johnson.[1] She alleges the company's OGX products contained an ingredient—DMDM hydantoin (DMDM)—that exacerbated her preexisting alopecia condition and led to her total hair loss. DMDM is a preservative used in cosmetic products. It releases formaldehyde (another chemical) when it encounters water. Formaldehyde, in turn, can irritate hair follicles.

Eventually, Johnson & Johnson removed DMDM from its OGX products. But at the time Buchanan bought and used OGX shampoo and conditioner, some OGX products still contained DMDM, because the company hadn't yet completely removed the substance from the OGX line.

Buchanan sought damages north of three million dollars. Johnson & Johnson moved for summary judgment. The company argued that Buchanan didn't have enough evidence showing

---

[1] Buchanan's husband is also a plaintiff in this lawsuit. For simplicity, we refer to the parties as "Buchanan." The district court dismissed Buchanan's other claims, including loss of consortium and punitive damages, because they were derivative of her products-liability claim. This appeal concerns only her underlying products-liability claim.

that (1) the shampoo she purchased contained DMDM and (2) DMDM caused her hair loss. The district court agreed with Johnson & Johnson and granted it summary judgment. Buchanan appealed.

## II.

As both parties agree, the Tennessee Products Liability Act (TPLA) governs Buchanan's appeal. *See* Tenn. Code Ann. § 29-28-102(6). That statute provides "an extensive statutory framework for all claims arising from injuries alleged to have been caused by products." *Coffman v. Armstrong Int'l, Inc.*, 615 S.W.3d 888, 895 (Tenn. 2021). To succeed on a Tennessee products-liability claim, a plaintiff must show that (1) the product was defective or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the product proximately caused the plaintiff's injury. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).

Taking a fresh look at the district court's summary-judgment decision, we affirm. Even assuming that Buchanan's bottle of shampoo contained DMDM, she hasn't shown that the chemical was a "substantial factor" in causing her hair loss, as required by Tennessee law. *See Jackson v. Ford Motor Co.*, 842 F.3d 902, 908 (6th Cir. 2016) (explaining that to show proximate cause in a TPLA action, the plaintiff must show that the product defect was a "substantial factor" in causing the injury).

In considering whether Buchanan had identified enough evidence to show causation, the district court only considered the testimony of Buchanan's expert, Dr. Schwartz. The court ignored all of Buchanan's non-expert testimony. Why? The court pointed to Tennessee cases holding that only expert testimony can establish causation in a complex medical case. Under *Erie Railroad*

*Co. v. Tompkins*, whether this rule applies in federal court depends on whether it is substantive or procedural. 304 U.S. 64 (1938); *see Madej v. Maiden*, 951 F.3d 364, 373–74 (6th Cir. 2020).

But we don't need to answer this question. Even considering *all* of Buchanan's evidence—both expert and non-expert—no juror could conclude that the OGX products were a substantial factor in her hair loss. So regardless of whether the expert testimony requirement is substantive or procedural, Buchanan loses.

Buchanan contends that the district court should have examined Johnson & Johnson's conduct and evidence of DMDM's safety risks. For example, she points out that industry groups lobbied to remove DMDM from baby products and that Johnson & Johnson phased DMDM out of its products. Buchanan also cites reports that the FDA plans to ban DMDM, and that "19.6% of DMDM hydantoin exposure cases reported hair falling out in clumps." Appellant Br. at 23–26, 37.

None of this evidence creates a question of material fact. Buchanan had already experienced significant hair loss and been diagnosed with alopecia areata when she started using the OGX products. The FDA's notice about banning chemicals like DMDM noted studies linking them to *cancers*, not hair loss. The same goes for a newspaper article discussing Johnson & Johnson's phasing out of DMDM and a nonprofit's letter urging the removal of DMDM from baby products. And Buchanan's 19.6% figure reported the percentage of product *complaints* that concerned hair falling out in clumps, not how often using the product caused hair loss. She doesn't tell us what percent of customers actually had a complaint—likely to be a very small percentage of overall users. So we can't know what percent of customers that used OGX products experienced this alleged side effect. There's no way to infer from any of this evidence that DMDM was a substantial factor in Buchanan's own hair loss.

What's more, even Buchanan's own expert refuses to say that DMDM caused her hair loss. Dr. Schwartz testified only that DMDM "cannot be ruled out as the cause, *or at the very least*, as a contributing factor" to Buchanan's total loss of hair. R. 80-3, Pg. ID 1847 (emphasis in original). And his refusal to pinpoint DMDM as the cause of Buchanan's hair loss was not a stray line from his report: he consistently refused to testify that DMDM caused Buchanan's total hair loss. In his deposition, Dr. Schwartz reaffirmed his statement. He clarified that he "can't rule [DMDM] out as the cause, but" he was "not ruling it in either." R. 101-1, Pg. ID 3429. And again, "I'm saying I can't rule [DMDM] out, but it may be just contributing." *Id.* at Pg. ID 3466; *see also id.* at Pg. ID 3413, 3436.[2]

These speculative statements don't raise a genuine dispute of material fact on causation under Rule 56. *Cf. Boyd v. Baeppler*, 215 F.3d 594, 603 (6th Cir. 2000) ("The speculation of plaintiff's expert is not sufficient evidence to create a genuine issue of material fact."). While Dr. Schwartz's statements suggest that the OGX products *could* have been the cause, they don't ever indicate that the OGX products *were* the cause of Buchanan's hair loss. Neither does the rest of Buchanan's evidence. On this record, no juror could conclude that the OGX products caused Buchanan's hair loss.

III.

That leaves one last point to make. At oral argument, Buchanan identified—for the first time in this litigation—an excerpt from her deposition suggesting she had knowledge that DMDM

---

[2] There's another possible *Erie* issue here. What *kind* of expert testimony is enough to raise a question of fact about whether the OGX products were a substantial factor in Buchanan's hair loss? Under Tennessee law, expert testimony "which amounts to mere speculation is not evidence which establishes proximate cause." *Primm v. Wickes Lumber Co.*, 845 S.W.2d 768, 771 (Tenn. Ct. App. 1992); *see also Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861–62 (Tenn. 1985). This rule is likely procedural because Tennessee courts treat it as an evidentiary requirement. *See, e.g.*, *Lindsey*, 689 S.W.2d at 862 (concluding an expert's testimony was "speculative" and therefore "inadmissible" to prove causation in a TPLA suit). But speculation is not enough to create a question of material fact in federal court either. So Dr. Schwartz's testimony doesn't suffice regardless of whether state or federal law applies.

was an ingredient in the OGX conditioner she used. This evidence would go to the second prong of the *Sigler* test—whether the defect existed at the time the product left the manufacturer's control. And it's certainly a pertinent piece of evidence, given that Buchanan otherwise just relied on a picture of the front of the bottle that didn't include an ingredient list.

But Buchanan did not present this evidence in her district court arguments or in her appellate briefs. Indeed, Buchanan affirmatively disavowed this argument. She agreed it was undisputed that "she could not confirm whether the OGX shampoo or conditioner she used contained DMDM." R. 75, Pg. ID 1448. The district court wasn't required to comb through Buchanan's 205-page deposition transcript to see whether Buchanan might have missed any helpful arguments. After all, "[j]udges are not like pigs, hunting for truffles" buried in the record. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1163 (6th Cir. 2021) (alteration in original) (citation omitted); *cf. LidoChem, Inc. v. Stoller Enters., Inc.*, 500 F. App'x 373, 388 (6th Cir. 2012) (Thapar, J., dissenting in part). And in any event, we rest our holding on Buchanan's failure to prove causation, so we need not opine on identification.

\* \* \*

As Tennessee law makes clear, Buchanan needed to show that the OGX products caused her hair loss. But Buchanan's expert only testified that the OGX products were a possible cause. And her other evidence wouldn't let a jury find causation, either. After all, Buchanan's hair loss started long before she ever used Johnson & Johnson's products. Unfortunately for Buchanan, mere possibility does not a genuine dispute of material fact make—under Tennessee law or the Federal Rules of Civil Procedure.

We affirm.